**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MARION COUNTY COAL RESOURCES, INC.,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:25-CV-56 (KLEEH)**

**UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, and UNITED MINE WORKERS OF AMERICA, DISTRICT 31,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], AND CONFIRMING ARBITRATION AWARD**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff and Counter-Defendant, Marion County Coal Resources, Inc. ("Plaintiff" or "Marion County Coal"), along with the Defendants and Counter-Claimants, the United Mine Workers of America, International Union, and the United Mine Workers of America, District 31 (together, the "Union" or "Defendants"). For the reasons discussed below, the Court **DENIES** Plaintiff's Motion [ECF No. 12] and **GRANTS** Defendants' Motion [ECF No. 14].

## I. PROCEDURAL HISTORY

On June 11, 2025, Plaintiff Marion County Coal filed suit against Defendants United Mine Workers of America, International Union, and United Mine Workers of America, District 31, pursuant

to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. ECF No. 1. Defendants filed their Answer and Counterclaim on August 1, 2025. ECF No. 6. Plaintiff answered Defendants' Counterclaim on August 21, 2025. ECF No. 8.

On October 31, 2025, Plaintiff filed its Motion for Summary Judgment, asking the Court to vacate Arbitrator Philip A. Smalley's Decision and Award ("Award") in American Consolidated Natural Resources, Inc./Marion County Coal Resources, Inc. and United Mine Workers of America, District 31, Local 9099, Case No. 20-31-25-035. ECF No. 12. Defendants responded in opposition to Plaintiff's Motion on November 21, 2025. ECF No. 15. Defendants additionally moved for summary judgment on October 31, 2025, asking the Court to affirm the Award as final, binding, and enforceable. ECF Nos. 14, 14-1. Plaintiff responded in opposition to Defendants' Motion on November 21, 2025. ECF No. 16. The Court heard oral argument on the motions on June 25, 2026. Both motions are fully briefed and ripe for review.

## II. BACKGROUND

### A. Longwall Assembly and Recovery

Since September 2020, Marion County Coal has operated the Marion County Mine (the "Mine"), a large underground coal mine located in Marion County, West Virginia. Compl., ECF No. 1, at ¶ 6. The Mine produces coal through the longwall method, which entails shearing coal from a single wall, or panel, of coal. Pl.'s

Mem. Supp. Mot. Summ. J., ECF No. 13, at 3. The mining of a longwall panel takes about nine (9) months to complete. Id. at 4. Once a panel is complete, all equipment is disassembled, moved, and reassembled at the next panel. Id. at 3-4. This process is referred to as "assembly and recovery," and generally takes between ten (10) and fifteen (15) days. Id. at 4.

Prior to Marion County Coal's acquisition of the Mine, Consolidation Coal Company ("Consolidation") operated the Mine from 1956 to 2013, at which time its assets were sold to The Marion County Coal Company ("TMCCC"). ECF No. 1, at ¶¶ 6, 9-10. Consolidation began using the longwall mining system in 1976, assigning related assembly and recovery work consistently to general inside laborers. Id. at ¶ 9-10. When TMCCC took over operations of the Mine in 2013, it continued the same practice. Id. at ¶ 11. Now, Marion County Coal similarly assigns longwall mining system assembly and recovery work to general inside laborers and has done so since acquiring the Mine in 2020. Id. at ¶ 12.

**B. The NCWA**

The subject action stems from a grievance filed by an employee at the Marion County Mine. The Union represents Marion County Coal's classified employees pursuant to the 2020 National Coal Wage Agreement ("NCWA" or "the agreement"), which sets forth the terms and conditions of employment for Union-represented Mine

employees. Id. at ¶¶ 2, 7; Defs.' Countercl., ECF No. 6, at 6, ¶ 5. The NCWA provides the following regarding "Work Jurisdiction":

> The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.
>
> Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

ECF No. 11-1, at 1-2.

The agreement also discusses the precedential effect of prior arbitration decisions:

> All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.

Id. at 86-87. Finally, the NCWA's grievance and arbitration provisions govern the settlement of disputes:

> Settlements reached at any step of the grievance procedure shall be final and binding

> on both parties and shall not be subject to further proceedings under this Article except by mutual agreement. Settlements reached at steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer.

Id. at 86.

**C. The Dispute**

On January 23, 2025, the Union filed a grievance on behalf of a Mine employee, alleging that Marion County Coal neglected to post job bids for employees assigned to perform longwall recovery and assembly work in violation of the NCWA. ECF No. 13, at 5; Defs.' Mem. Supp. Mot. Summ. J., ECF No. 14-1, at 8. The grievance further indicated that Marion County Coal had assigned one foreman and two or more general inside laborers to perform the job. See ECF No. 11-1, at 133. As relief, the grievance requested that Marion County Coal post three (3) job bids for such recovery and assembly work. Id.

**D. The Arbitration Award**

After several failed attempts to settle the dispute, an arbitration hearing was held before Arbitrator Philip A. Smalley ("Arbitrator Smalley" or "the Arbitrator") on March 27, 2025, in Fairmont, West Virginia. ECF No. 13, at 5; ECF No. 14-1, at 8; see ECF No. 11-1, at 134. The issue presented to the Arbitrator was whether Marion County Coal had violated the NCWA and, if so, to identify the appropriate remedy for such violation. ECF No. 11-1,

at 153. After considering each party's arguments, evidence, and witness testimonies, Arbitrator Smalley issued his Award on April 25, 2025, finding that Marion County Coal violated the NCWA by failing to post job bids for the assigned longwall recovery and assembly work, as required for new jobs under the agreement. See id. at 157-60; ECF No. 13, at 6. Accordingly, Arbitrator Smalley sustained the Union's grievance and required Marion County Coal to post job vacancies for three (3) permanent job openings in longwall recovery and assembly. ECF No. 11-1, at 160.

### E. Parties' Contentions

Plaintiff argues that Arbitrator Smalley issued an award that contradicts express contract language and instead comports with his own sense of fairness and equity. Most notably, Plaintiff contends that the Arbitrator ignored binding arbitral precedent requiring him to deny the Union's grievance. Defendants argue that the Award is entitled to deference and should be upheld because it draws its essence from the agreement. Defendants believe Arbitrator Smalley applied the contract language, considered past arbitral precedent, and best drew the Award's essence from the NCWA.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant

"bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citations omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). At its core, the summary-judgment process examines whether a trial is needed. See id. at 250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted). The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment.").

## IV. GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960)). "An arbitrator's award is entitled to special judicial deference on judicial review." Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994). Accordingly, courts generally afford a presumption of validity to arbitration awards. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996) (citing Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns

Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992)). This is because the parties "bargained for the arbitrator's interpretation and resolution of their dispute." Id. (citing Enterprise Wheel, 363 U.S. at 599).

The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] "emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). In reviewing arbitration awards, the Court "must determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas, 76 F.3d at 608 (citing Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)). In this determination, the Court considers:

> (1) the arbitrator's role as defined by the [collective bargaining agreement]; (2) whether the award ignored the plain language of the [collective bargaining agreement]; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the [collective bargaining agreement's] proscribed limits.

Id.

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

Still, there are some limitations on arbitration awards. The award must "draw its essence from the collective bargaining agreement." Id. at 608 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987)). In other words, it cannot "simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 363 U.S. at 597. But "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." Misco, 484 U.S. at Syl. Pt. 1(a). In deciding whether an award draws its essence from the agreement, courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators' reasoning to determine whether the arbitrator applied "his own brand of industrial justice." Cannelton, 951 F.2d at 594.

In reviewing arbitration awards, a Court must also evaluate whether the arbitrator considered "any existing common law of the particular plant or industry, for it is an integral part of the contract." Norfolk Shipbuilding & Drydock Corp. v. Int'l Bhd. of Boilermakers, 671 F.2d 797, 799-800 (4th Cir. 1982). It is well-established that a "labor arbitrator's source of law is not

confined to the express provisions of the contract, as the industrial common law — the practices of the industry and the shop — is equally a part of the collective bargaining agreement although not expressed in it.” United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960). This includes past arbitral decisions. Clinchfield Coal Co. v. Dist. 28, UMWA, 738 F.2d 998, 999 (4th Cir. 1984).

## V. DISCUSSION

Recognizing the extremely limited role of the Court in deciding arbitration decisions and the great deference afforded to arbitrator decisions, the Court finds that the Award draws its essence from the agreement. Arbitrator Smalley sufficiently considered the issue of whether Marion County Coal violated the agreement and issued an award he deemed an appropriate remedy. At a minimum, the Arbitrator “arguably” applied the contract and acted within the scope of his authority.

The Court rejects Plaintiff’s primary argument that Arbitrator Smalley ignored the precedential effect of past Arbitration Review Board (“ARB”) decisions under the agreement.[2] ECF No. 13, at 13-14. Plaintiff maintains that ARB Decision No. 19 required Arbitrator Smalley to find that removing general inside

[2] Article XXIII, Section (k) of the NCWA renders precedential any ARB decisions issued prior to the expiration of the National Bituminous Coal Wage Agreement of 1978.

laborers from performing longwall assembly and recovery work would "negatively affect their seniority rights," as that classification has performed such work consistently since 1976. Id. at 10. Plaintiff's reliance on this Decision alone is misplaced.

The Arbitrator considered copious ARB decisions submitted by the parties, including those issued before and after the expiration of the National Bituminous Coal Wage Agreement of 1978 ("NBCWA"). See ECF No. 11-1, at 152-53. In doing so, he seemingly found appropriate the application of more recent arbitral decisions. See id. at 153, 155-56. The Arbitrator reviewed the various arbitration decisions submitted by the parties and applied the principles from the decisions he found most relevant to his analysis. See id. at 157-160. As Defendants point out, there is no indication that arbitration decisions issued prior to the expiration of the NBCWA, namely ARB Decision No. 19, are any more precedential or controlling than those issued after. See ECF No. 15, at 12. Accordingly, Arbitrator Smalley was within the scope of his authority to afford greater weight to past arbitral decisions other than ARB Decision No. 19, despite Plaintiff's assertions otherwise.

Additionally, the Court is not persuaded by Plaintiff's argument that Arbitrator Smalley relied on personal notions of fairness and equity to make his determination. See ECF No. 13, at 13-15. The Court recognizes that the Award makes numerous

references to factors not expressly addressed by the agreement, such as artificial intelligence, renewable energy sources, and government regulations. See ECF No. 11-1, at 153-54. Still, the Arbitrator's discussion of such factors is not alone grounds to invalidate his Award. In substance, Arbitrator Smalley reviewed the parties' arguments, analyzed contract language, and applied and distinguished past arbitral precedent. See id. at 151-57. Thus, the Arbitrator did not merely apply his own brand of industrial justice to the Award.

For these reasons, the Court finds that the Award draws its essence from the agreement. The Arbitrator did not ignore past arbitration decisions or fail to apply express contract language. To the contrary, he analyzed the agreement and construed its terms in accordance with established arbitral precedent. Arbitrator Smalley did his job, and the Court will refrain from discerning whether he did it correctly or whether the Court would have done it differently. The record before the Court does not support this Court taking the drastic step to overturn this arbitration award.

## VI. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **DENIED** [ECF No. 12], and Defendants' Motion for Summary Judgment is **GRANTED** [ECF No. 14]. The arbitration award is **CONFIRMED**. It is further **ORDERED** that this action be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:** August 19, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA